# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

**WENDELL WILLIS,**[1]

    *Plaintiff*,

v.                                                                   Case No. 5:23-CV-1408-JKP

**AMIFAST,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss (ECF No. 19),[2] a Motion for Appointment of Counsel (ECF No. 22) filed by Plaintiff, and related filings (ECF Nos. 20 (response to motion to dismiss), 21 (notice of filing additional evidence by Plaintiff), 23 (supplemental evidence filed by Plaintiff), 24 (reply supporting motion to dismiss), 25 (additional supplement filed by Plaintiff), 26 (response in opposition to supplement), and 28 (sealed medical records). Both motions are ready for ruling.

### I. BACKGROUND

Plaintiff commenced this action by filing an application to proceed in forma pauperis ("IFP") with a proposed complaint. *See* ECF No. 1. He also moved for appointment of counsel. *See* ECF No. 2. The Court granted him permission to proceed IFP, directed that the proposed complaint be filed, and denied the motion for appointment without prejudice because Plaintiff had failed to show that he had made reasonable efforts to secure private counsel or that extraordinary circumstances existed to warrant appointment of counsel. *See* ECF No. 4.

---

[1] The Court utilizes the spelling found in Plaintiff's initial court filings rather than the spelling found on the docket of this case. And for purposes of accuracy, the Court directs the Clerk of Court to correct the spelling to "Wendell."

[2] Plaintiff names "Amifast" as Defendant. In the motion, Hawkeye Pedershaab Concrete Technologies Inc. ("Hawkeye") states that Plaintiff has incorrectly identified it as Amifast. The motion explains that Hawkeye acquired Amifast in December 2019. In response to the motion, Plaintiff continues to refer to the Defendant as Amifast, *see* ECF No. 20, although his more definite statement (ECF No. 17) identifies Hawkeye as his employer. The Court has no need to clarify the correct name. It will simply use "Defendant" or "the employer" to refer to the entity sued in this case.

In his complaint (ECF No. 5), Plaintiff asserts a claim for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Compl. ¶ 1. According to Plaintiff, Defendant terminated his employment and denied him a promotion because of his race, color, and national origin. *Id.* ¶ 7. He provides no other factual details but indicates that he seeks compensation for lost wages, life insurance, and mental abuse. *See*, *generally*, *id*.

The complaint resulted in an unopposed motion for more definite statement (ECF No. 12), which the Court granted, *see* ECF No. 13. The Court required the more definite statement to contain specific factual information concerning Plaintiff's claims, and warned Plaintiff that a failure to comply with the order could result in dismissal of the case for failure to prosecute or comply with a court order as permitted by Fed. R. Civ. P. 41(b).

The same day that the Court granted the motion for more definite statement, Plaintiff again moved for appointment of counsel. In denying that motion without prejudice, the Court noted that Plaintiff's efforts to secure his own attorney are inadequate and the factual allegations in his complaint are insufficient to warrant appointment of counsel. ECF No. 16. It also noted that should Plaintiff "develop the facts of this case" such that it "can proceed beyond the preliminary stages and into dispositive motions or the final pretrial phase, a further request for appointed counsel might fare better." *Id*.

Plaintiff provided additional factual detail for his claims. *See* ECF No. 17 (more definite statement with exhibits provided in thumb drives). He recites various incidents to support his claim of racial discrimination. The Court organizes them chronologically and summarizes them:

July 2021: Defendant hired Plaintiff.

October 5, 2021: For about six months, Shawn Vickers ("SV") would yell at, "talk down towards," and belittle Plaintiff before apologizing for the behavior. After six months, SV stopped apologizing.

February 9, 2022: Plaintiff jokingly asked Jack Bevers ("JB") when he would take Plaintiff fishing on his boat, and JB replied that "the only way you going fishing on my boat I will tie you up to the back of my boat and drag you." Plaintiff laughed

2

off the remark but reported it to "Amber." The harassment calmed down for a little while after that.

About June 2022: Defendant hired Everett Lunday ("EL") and had Plaintiff train him. "It was almost impossible to train him [because] he constantly disrespected me disregarded everything I told him to do so I gave up on training him and they still hired him even though he was not doing his job properly." Plaintiff complained to the warehouse manager, Kevin Vickers ("KV"), "several times" but he (KV) would make it look like it was [Plaintiff's] fault that [EL] was doing his job wrong." Once, after Plaintiff instructed EL "how to do the job correctly," EL yelled at Plaintiff and told him "you're not my boss you cannot tell me what to do get out of my face." Plaintiff also reported this incident to KV.

November 2022: EL verbally threatened Plaintiff by "saying he would shoot him [(Plaintiff)] with his gun." Plaintiff told HR, KV, and Kevin Book "KB", but they did nothing about it.

November 17, 2022: Plaintiff had an incident with EL regarding moving pallets with a forklift versus a pallet jack. EL responded to Plaintiff's efforts to help by yelling at "the top of his lungs cursing and threatening" Plaintiff. Although everyone heard the outburst, no one did anything.

December 2022: Plaintiff describes an event with EL regarding EL opening a door and talking loudly. He further elaborates that the event occurred during lunch and that he generally does not eat lunch with EL because EL will harass him. EL left the breakroom door open, turned his chair to face Plaintiff and talked very loudly on the phone, "provoking a fight." Plaintiff closed the breakroom door. Plaintiff explains that all the bosses go out for lunch. Because Plaintiff was in distress, he twice called KB who did not answer. Plaintiff then called KV who answered and returned with SV. Plaintiff was crying and upset. Neither KV nor SV had any empathy for Plaintiff and told him he "was wrong."

February 2023: EL again told Plaintiff he would shoot him with his gun. KV again did nothing.

March 2023: KB informed Plaintiff that the company was looking outside the company for a warehouse manager. Plaintiff indicated that he wanted to fill the position, but KB told him, "Sorry Wendell, I already made my decision to hire outside the company." KB hired Levi Martinez.

June 3 and 4, 2023: Plaintiff texted Barry Bauer, KB's boss, who acted like he would help Plaintiff. Instead, he forwarded all the text messages to KB, "so they fired me the next day." As shown by the messages provided by Plaintiff, the messages occurred on June 3 and 4.

June 15, 2023: Plaintiff's keys were taken from the breakroom. Plaintiff and SV searched all over the warehouse but did not find them. While a locksmith made a new copy, SV returned with the keys, saying he found them where Plaintiff had "pulled [his] last order." Plaintiff says that was a lie because he had looked there and found no keys. Plaintiff also stated that that morning he had "tried to clock in"

but could not. He interpreted that as showing that he "was already terminated."

June 16, 2023: Plaintiff was terminated without any reason. He feared for his life because there were police officers in plain clothes in the warehouse. Defendant gave him "five minutes to leave the property."

As a result of these events, Plaintiff sought medical attention and was diagnosed with "(PTS) Post-traumatic stress."

Plaintiff also generally described EL as making his "workplace very hostile and uncomfortable." EL told Plaintiff about how he carries a gun in his car, he would shoot Plaintiff if they got in a fight, and he said that to Plaintiff "more than once." Further, on several occasions, EL would try to walk into Plaintiff to bump shoulders. Plaintiff cannot even walk down the same warehouse aisle without EL trying to start a fight with him. Although KV, SV, and KB told Plaintiff to come to them anytime he had a problem, they would never do anything and would "flip it around to where it's my fault." He noted that he was "the only black employee," the others are Caucasian except for "one Mexican." Plaintiff provided no other specific facts with his more definite statement, but he did propose a settlement for lost wages; ten years of lost future earnings with cost-of-living increases; compensation for mental distress, mental abuse, and defamation of character; and the amount of his life insurance policy ($86,000).

A docket entry dated January 18, 2024, also notes receipt of "2 Thumb Drives Exhibits" to Plaintiff's more definite statement (ECF No. 17). The exhibits consist of (1) a Word document containing ten screenshots of messages between "Barry" and Plaintiff from June 2023; (2) two videos; and (3) a folder titled "Pictures" with four more videos. The screenshots do not support any claim of racial discrimination. Plaintiff relates that he has had difficulty with another employee ("Everett") who has made Plaintiff's "work atmosphere very hostile." Everett would go out of his way to be around Plaintiff. Plaintiff stated that he was scared, could not sleep, and had "been uncontrollably crying." Barry thanked Plaintiff "for sharing" and asked if it was okay to "share this with the [right] people," to which Plaintiff said it was okay.

The first two videos, one about twenty-three minutes in length, and the other about seventeen minutes, record two interactions between Plaintiff and his boss (the first video) and HR (the second video). Although these exhibits are in video format, the visual aspect is unimportant. Plaintiff clearly presents the exhibits for their audio rather than visual aspects. Accordingly, the Court will refer to these videos as recordings.

The first recording reflects a professional conversation between boss and employee where the boss is trying to determine what had happened between Plaintiff and another employee and between Plaintiff and another supervisor. Nothing in the recording provides anything to support a claim of discrimination, racial or otherwise. Plaintiff often indicates that everything is okay, that he acted immaturely, and may have said some things the wrong way. From the recording it is apparent that Plaintiff had previously said something that at least gave the impression that he did not want to be a driver any longer.

The second recording reflects that Defendant fired Plaintiff for unprofessional behavior. Defendant stated that it was unprofessional to make derogatory statements about co-workers and to refuse to drive. The emotional recording reflects no statement or action of Defendant to support a claim of discrimination, racial or otherwise. It merely records Plaintiff's termination for a purported nondiscriminatory reason. At one point, Plaintiff brings race into the discussion by making accusations of prejudice and bringing up a prior comment that he had reported to HR, the one by JB regarding dragging Plaintiff behind a boat.

Of the videos from the folder, three have no apparent relevancy to this case—one is a mere nine seconds and records nothing that the Court can discern as relevant; one is nineteen seconds contains "trashed" in the title and has no apparent relevancy; and one is a nearly two-minute recording of an empty and quiet room. The last is almost three minutes and records a conversation between Plaintiff and one of his supervisors discussing an earlier event. But even this recording does not reveal anything about any discrimination.

Defendant thereafter moved to dismiss this action under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 41(b), and 28 U.S.C. § 1915(e)(2)(B)(ii). *See* ECF No. 19 at 1. This prompted a response (ECF No. 20); a notice of additional evidence (ECF No. 21, indicating submission of "two USB"); a third motion for appointment of counsel (ECF No. 22); and supplemental evidence (ECF No. 23) before Defendant filed a reply (ECF No. 24) in support of its motion to dismiss. The same day that Defendant filed its reply, Plaintiff filed another additional supplement (ECF No. 25), which prompted Defendant to respond (ECF No. 26). And the filings in this case concluded with Plaintiff filing supplemental medical records (ECF No. 28) under seal. The two pending motions are ripe for ruling.

## II. MISCELLANEOUS FILINGS

Before addressing the motion to dismiss (ECF No. 19) and permissible briefing (ECF Nos. 20 and 24), the Court will address the miscellaneous filings. The notice of additional evidence (ECF No. 21) merely states that Plaintiff had submitted two USB with exhibits with his response to the motion to dismiss. The exhibits are essentially the same as those submitted with his more definite statement except that he only provides the two longer video/recordings and provides a new screenshot missing from his earlier submission. In this new message dated June 16, 2023, Plaintiff accused Barry of getting Plaintiff terminated for something he (Plaintiff) did not do.

Supplemental evidence (ECF No. 23) relates to Plaintiff's mental health and shows that as of February 12, 2024, Plaintiff had active diagnoses, including depression and post-traumatic stress disorder. Plaintiff also states that he will provide his medical records when he receives them, which he did with his March 14, 2024 filing of medical records (ECF No. 28).

An additional supplement (ECF No. 25) is a single-spaced, one-page statement wherein Plaintiff states that he has given "proof of harassment, a hostile work environment and proof of discrimination of color and [defamation] of character." He asserts that the provided videos show that Defendant fired him "under false reasons." He makes several new allegations:

6

    1. Defendant punished him for reporting that EL was harassing him.

    2. KB offered him four weeks of severance pay to quit and KB said, "if I stay know your place boy you cannot be telling [co-workers] what to do." This confused Plaintiff because he had been told to train his co-workers.

    3. Defendant "tried to have [him] arrested and killed."

    4. The day Defendant fired him they "already had the police there because they knew they were wrong for what they did I was so scared."

    5. The second week of Everett's employment, Everett yelled at Plaintiff, "you are not my boss and I don't take orders from your kind." Plaintiff reported this to KV, who did not believe him. Plaintiff and KV then spoke to KB who asked whether Everett called Plaintiff "any racial names" and when Plaintiff answered with what Everett had said, both KV and KB said that was not enough.

    6. After that incident with Everett, Plaintiff was called into the office to speak to KB who said he would talk to Everett. Still, KB disciplined Plaintiff by saying that he (Plaintiff) "was trying to be [his co-workers'] boss."

    7. Plaintiff worked his first year alone and things got messy when Defendant hired James, resulting in a complaint, but KV did nothing about it. Things "got worse once they hired Everett, a very unsafe workplace." Plaintiff "put in several complaints," resulting in everyone calling him "a troublemaker."

    8. One month after Defendant hired Everett, Plaintiff and Everett had a confrontation where Everett "flipped out and started yelling at the top of his lungs cursing and threatening to kill me [(Plaintiff)]." KV again did nothing when Plaintiff reported this incident.

ECF No. 25. Plaintiff claims to have proven that Defendant discriminated against him because of the color of his skin. *Id*.

Defendant's response (ECF No. 26) to Plaintiff's additional evidence (ECF No. 25) characterizes some of Plaintiff's filings (ECF Nos. 21, 23, and 25) as untimely, improper, and subject to the Court disregarding them as such. The Court, however, views ECF No. 21 as merely providing exhibits to Plaintiff's timely response to Defendant's motion to dismiss. The exhibits reflect a filing date of February 12, 2024, the same date as Plaintiff's pro se response. Similarly, Plaintiff submitted ECF No. 23 within the time period for his response to the motion to dismiss. Although a response should not be filed piecemeal, the Court will leniently consider ECF No. 23 as part of Plaintiff's response. Notably, that supplement (ECF No. 23) as well as the actual medical

7

records (ECF No. 28) are unimportant unless Plaintiff has stated a claim that survives the motion to dismiss. Plaintiff identifies the records as "Additional evidence in support of Definite Statement." While one record indicates that Plaintiff informed a medical provider that his firing triggered his depression, nothing in these records provide any factual allegation to support finding that Plaintiff has stated a claim upon which relief can be granted.

Defendant accurately characterizes ECF No. 25 as untimely and improper. The Court could certainly disregard the filing for those reasons. Defendant also accurately points out that a plaintiff cannot raise new allegations and claims in response to a motion to dismiss. Nevertheless, because the new allegations make no difference to the actual outcome, the Court will consider them also.

### III. MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks to dismiss this action. Under Rule 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). But courts may require parties to file a more definite statement. *See* Fed. R. Civ. P. 12(e). They may also require pro se litigants to amplify their factual allegations through testimony or answers to a court-drafted questionnaire. *See Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). Whether a party amplifies his or her pleading through a more definite statement, testimony, or answers to a questionnaire, the additional allegations "become[] a part of the total filing by the pro se" litigant. *See id*. Thus, for purposes of

a motion to dismiss, such amplification is part of the plaintiff's operative pleading and may be considered by the Court without it converting the motion to one for summary judgment as otherwise required by Fed. R. Civ. P. 12(d).

Courts may permissibly consider video evidence when included with the complaint. *See Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam). Naturally, they may consider such evidence when presented through a more definite statement as Plaintiff has done here. Further, when a pleading refers to documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). It is also "clearly proper . . . to take judicial notice of matters of public record" when deciding a Rule 12(b)(6) motion. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

With its motion to dismiss, Defendant provides the Charge of Discrimination that Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff therein alleges discrimination based on color or race. *See* ECF No. 19-1. The earliest date that discrimination occurred was November 1, 2022, and the latest was June 16, 2023. *See id*. Plaintiff stated therein that he was hired for a warehouse position in July 2021 by CEO, Kevin Book, a Caucasian. *Id*. He added the following particulars with his Charge:

> On or around November 2021, during a personal conversation that I had with the Owner, Jack Bevers/Caucasian, and Mr. Book about boats and fishing, Mr. Bevers made a statement to the effect that the only way I could get on his boat is if I was tied up on the back of his boat and dragged. Although this was a onetime incident/statement that he made, it was unwelcomed and threatening.

*Id*. Courts "may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(b)(6) motion." *Prewitt v. Cont'l Automotive*, 927 F. Supp. 2d 435, 447 (W.D. Tex. 2013). This Court thus can and does take judicial notice of Plaintiff's EEOC complaint that Defendant has attached to the motion to dismiss.

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the [operative pleading] in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). "And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted." *C.M. v. United States*, 672 F. Supp. 3d 288, 353 (W.D. Tex. 2023).

A well-pleaded pleading "may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, parties asserting a claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Parties need not plead the legal basis for a claim, but they "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). And they satisfy that standard when they allege "simply, concisely, and directly events" that are sufficient to inform the defendant of the "factual basis" of their claim. *Id*.

Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice. Thus, though we generally take as true what a complaint alleges, we do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

10

*Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the party asserting the claim will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Courts, of course, liberally construe pleadings of a pro se litigant, like Plaintiff here. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). But that does not dispense with the pleading requirements of Rule 8(a) as interpreted by *Iqbal* and *Twombly*.

"Further, while asserted defenses may support dismissal under Rule 12(b)(6), they only do so when the operative 'pleading conclusively establishes the affirmative defense.'" *C.M.*, 672 F. Supp. 3d at 354 (quoting *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013)). When a party raises a "defense through a motion to dismiss under Rule 12(b)(6), the courts view it through the standards applicable to such motions." *Williams v. NIBCO Inc.*, No. SA-20-CV-0048-JKP-RBF, 2021 WL 1069044, at *7 (W.D. Tex. Mar. 18, 2021).

### A. Title VII

Although Plaintiff phrases his claim as discrimination based on race, color, or national origin, it is clear from his complaint, more definite statement, EEOC complaint, and related filings that his discrimination claim is based only on his race or color. Title VII makes it unlawful for covered employers to discriminate against individuals with respect to their "terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Except as otherwise provided in this subchapter [(Subchapter VI of Title 42 of the United States Code, which encompasses all provisions of Title VII)], an unlawful employment practice is established when the complaining party demonstrates that race, color,

11

religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id*. § 2000e-2(m).

A plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). "If, as here, the plaintiff instead files with the corresponding state agency, the limitations period extends to 300 days." *Abrams v. Am. Airlines Inc.*, 302 F. App'x 242, 243 (5th Cir. 2008) (per curiam) (citing 42 U.S.C. § 2000e-5(e)(1)). This means that Plaintiff "has a viable Title VII claim only for acts that occurred" within the 300 days prior to his EEOC Complaint. *See id*.

Because Plaintiff filed his Charge of Discrimination on August 1, 2023, *see* ECF No. 19-1 at 2, any act on or before October 5, 2022, which is 300 days before he filed his complaint, falls outside the applicable limitations period. However, when "a discriminatory employment practice . . . manifest[s] itself over time," a continuing violation theory may provide an equitable exception to this limitations period." *Abrams*, 302 F. App'x at 243-44. But this exception does not apply when the plaintiff "alleges a series of discrete acts." *Id*. at 244. To justify the exception there must be "a series of related acts, one or more of which falls within the limitations period." *Brown v. City of Central*, No. 23-30146, 2024 WL 546340, at *5 (5th Cir. Feb. 12, 2024) (per curiam) (citation and internal quotation marks omitted).

The Title VII filing requirement is a non-jurisdictional prerequisite to suit that may be raised as an affirmative defense. *Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *3 (5th Cir. Oct. 12, 2023); *accord Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (describing it as a mandatory processing rule rather than "a jurisdictional prescription"). Like other affirmative defenses, a failure to exhaust may result in dismissal under Rule 12(b)(6) "if the defense is evident on the face of the complaint." *Hamilton*, 2023 WL 6635076, at *3. And the face of the complaint includes matters of public record that courts may properly take judicial notice. *Id*.

While not entirely clear, it appears that Plaintiff alleges two types of claims under Title VII—disparate treatment and hostile work environment. Courts approach these types of claims differently.

**B. <u>Asserted Claims</u>**

To establish a hostile work environment claim, Plaintiff must demonstrate that (1) he belongs to a protected class;(2) was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005). The fourth element requires that the harassment "be sufficiently severe or pervasive" so as "to alter the conditions of [the victim's] employment and create an abusive working environment." *Id*. (omitting internal quotation marks while quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

When analyzing Title VII claims of disparate or discriminatory treatment, courts utilize the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) unless there is direct evidence of discrimination. *Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018). Under the *McDonnell Douglas* framework, plaintiffs must first establish "by the preponderance of the evidence a prima facie case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). "In order to establish a prima facie case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).

"The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). "Thus, for

purposes of surviving a Rule 12(b)(6) motion to dismiss, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination.'" *Puente v. Ridge*, 324 F. App'x 423, 427 (5th Cir. 2009) (quoting *Swierkiewicz*, 534 U.S. at 511). Nevertheless, courts "may consider the *McDonnell Douglas* framework, and no plaintiff is exempt from [his or] her obligation to 'allege facts sufficient to state all the elements of her claim.'" *Id*. at 427-28 (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008) (per curiam)).

As recognized by the Fifth Circuit, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of [his or] her protected status.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). A Title VII plaintiff alleging discrimination must allege enough facts to create an inference of discrimination, which requires more than a speculative possibility that the employer took adverse action against the plaintiff because of a protected characteristic.

At this point in the litigation, Plaintiff must only allege sufficient facts to plausibly state a claim of racial discrimination—either as a hostile work environment or as disparate treatment. As to alleged disparate treatment, Plaintiff's allegations are completely devoid of any connection between his race/color and any adverse employment action of Defendant. With respect to the alleged promotion denial, Plaintiff makes no factual allegation to plausibly suggest that Defendant intentionally selected Mr. Martinez over Plaintiff because of Plaintiff's race. Plaintiff does not allege any facts to suggest that he was qualified for that promotion. The only alleged facts relevant to his qualifications are that Defendant hired Plaintiff in July 2021, and he thus had about twenty months with Defendant at the time it hired Mr. Martinez. Without more facts as to his qualifications, the Court would have to speculate that Plaintiff was qualified for the promotion. Qualifications aside, Plaintiff has presented no factual allegation that Defendant did not promote Plaintiff because of his race. There is no basis to reasonably infer that Plaintiff did not secure the

14

promotion because of his race.

As to an alleged hostile work environment, Plaintiff alleges incidents with several individuals. But the alleged incidents with SV have no racial overtones at all. These incidents add no basis for finding a severe or pervasive hostile work environment based on Plaintiff's race or color. There is no allegation that SV's comments or conduct was racially motivated at all.

Plaintiff also alleges a single isolated incident with JB that formed the basis for his formal Charge of Discrimination—the comment about dragging Plaintiff behind JB's boat. In his Charge, Plaintiff characterizes this as a "onetime incident/comment." This incident is entirely separate and distinct from all other allegations of Plaintiff. As it falls outside the 300-day limitations period, it cannot provide a basis for a claim that entitles Plaintiff to relief. This incident, furthermore, has no alleged relationship to any adverse employment action. As an isolated incident involving JB, moreover, it is insufficient to support a claim of hostile work environment even if the Court can reasonably construe it as racial in nature. To the extent it may indicate racial animus, it is not so severe standing alone to support such a claim. And a single comment provides no basis to find a pervasive racially hostile environment.

Plaintiff alleges two incidents with KB—the failure to promote Plaintiff and the comment where KB said "know your place boy." The Court has addressed the failure to promote in the disparate treatment context and finds nothing about that incident to suggest any hostile work environment. Plaintiff does not indicate that he even interpreted the "boy" comment as racially offensive in the given context. His supervisor seemed to be merely counseling Plaintiff to not act like a supervisor over coworkers. Regardless, referring to Plaintiff as "boy" may be racially offensive in some contexts. *See Chambliss v. Entergy Corp.*, No. CV 22-2488 DIV. 2, 2023 WL 7114669, at *9 (E.D. La. Oct. 27, 2023) (recognizing the term is vague and "while it may not always be benign, neither is it always offensive"). Given the alleged context of the comment, however, the comment does not rise to the level of severity required to state a plausible race

15

discrimination claim based on a hostile work environment. *See Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009) (per curiam) (finding on summary judgment that three comments tied to race, including two calling the plaintiff, "boy," were insufficient to satisfy the fourth element of a hostile work environment claim).[3] And an isolated comment is not pervasive enough to survive a motion to dismiss.

Plaintiff primarily bases his discrimination claim on the conduct of EL. With respect to harassment by EL, Plaintiff merely alleges that EL disrespected him and threatened him. But he makes no allegation that the harassment from EL was racially motivated. "Title VII does not protect employees from hostile conduct that is not based on their protected status." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996). Bullying or harassment unrelated to Plaintiff's race does not support a claim of race discrimination.

While Plaintiff alleges that EL did state that he does not "take orders from your kind," which might mean he does not take orders from black individuals, the phrase "your kind" is ambiguous and does not qualify "as direct evidence of race discrimination." *See Taylor v. Odom's Tenn. Pride Sausage, Inc.*, No. 4:08-CV-02833 SWW, 2010 WL 892075, at *4 (E.D. Ark. Mar. 8, 2010). But viewing the alleged fact in the light most favorable to Plaintiff, the Court reasonably construes it as racial in nature. Still, "'isolated incidents (unless extremely serious)' are insufficient for a hostile work environment claim" to survive a motion to dismiss. *English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019). Plaintiff alleges only this one comment by EL that the Court can reasonably construe to be racial in nature for purposes of the instant motion to dismiss. The remainder of Plaintiff's allegations concerning EL simply do not suggest racial animus.

Plaintiff and EL certainly did not get along. There appears to be a personality conflict

---

[3] The Court is aware that the word "boy" has been used in certain contexts as a derogatory term toward African American men. But Plaintiff's failure to plead sufficient facts prevents the Court from drawing an inference of racial animus regarding the use of the word "boy" in this isolated context.

between them. But to find the conflict to be racially motivated requires sheer speculation. Plaintiff alleges insufficient facts to reasonably infer that race was an underlying basis for the conflict. Considering the alleged circumstances in totality, and in a light most favorable to Plaintiff, the Court cannot reasonably make that inference. Plaintiff has alleged insufficient facts to infer that discriminatory conduct of EL was sufficiently severe or pervasive to state a hostile work environment claim that survives Defendant's motion to dismiss.

In summary, while Plaintiff sets out various instances of objectionable behavior, viewing the facts in the light most favorable to him, only three of these instances can reasonably be tied to his race—the dragging comment made by JB in 2021 or February 2022; the "your kind" comment made by EL soon after he was hired in or about June 2022; and the "boy" comment made by KB in May 2023. These sporadic, isolated comments by three separate individuals in three different contexts lack a sufficient relationship to support a pervasive or severe hostile work environment. Even if one person had made each of these vague comments, they "do not rise to the level of severity or pervasiveness required to show a hostile work environment." *See Cavalier*, 306 F. App'x at 107 (making similar finding on summary judgment for three racially related comments). Nor do these alleged comments provide enough factual allegations to satisfy the fourth element of a hostile work environment claim on a motion to dismiss. Consequently, Plaintiff has failed to allege enough facts to plausibly state a hostile work environment claim.

Furthermore, none of these comments are connected to any adverse action by Defendant. Based on the allegations of Plaintiff, the Court cannot reasonably infer that Defendant took any adverse action against Plaintiff because of his race or color. Plaintiff has not alleged enough facts to plausibly state a claim of disparate treatment. He has presented no factual allegations to plausibly suggest that his termination was motivated by his race. Neither the submitted videos nor messages provide a reasonable basis to infer that Defendant terminated Plaintiff because of his race or color. To the contrary, they reveal professional communications from management to

Plaintiff. Nothing within the messages or videos reflects any racial animus on the part of Defendant. The only time race arises in the videos or messages is when Plaintiff himself injects it into the conversation near the end of the recording of his termination. And even then, he merely mentions the boating comment that had occurred long before his termination.

The videos are properly considered by the Court as part of Plaintiff's more definite statement, which in turn is considered to be part of his operative pleading. Indeed, when considering video evidence, courts are "not required to favor plaintiff's allegations over video evidence" on a motion to dismiss, *see Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam), or even at summary judgment, *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Here, the video recordings simply do not advance Plaintiff's factual allegations. They reveal no connection between his firing and any racial animus. They do not reveal a hostile work environment. With respect to Plaintiff's claim of racial discrimination, whether as a hostile work environment or disparate treatment, the videos do not utterly discredit such claims—but neither do they support such claims.

That Plaintiff was the only black employee of Defendant is of itself insufficient to support a claim of race discrimination. Such lack of diversity does not provide a reasonable basis to infer that Plaintiff was a victim of intentional discrimination.

Title VII is not intended to be a code of civility, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), or to prevent employers from taking perceived unjust actions against an employee. It is intended to protect individuals from discrimination because of their protected status. And a hostile work environment claim "necessarily rests on an allegation that an employer has created a working environment heavily charged with discrimination." *Raj v. La. State Univ.*, 714 F.3d 322, 330-31 (5th Cir. 2013) (citation and internal quotation marks and ellipses omitted). Plaintiff makes insufficient factual allegations to plausibly state a racial discrimination claim either premised on disparate treatment or hostile work environment.

### C. Retaliation

Plaintiff seems to assert a claim of retaliation in response to the motion to dismiss. Parties, however, may not raise new claims in response to such a motion. *See Cutera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (finding claim "raised only in response to a motion . . . not properly before the court"). Consequently, this action does not include a retaliation claim. Furthermore, even if the Court were to accept the new claim, Plaintiff's EEOC Charge clearly reflects that he has not exhausted any retaliation claim. Thus, any such claim would be subject to dismissal without prejudice for failure to exhaust. *See Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 & n.2 (5th Cir. 2018) (affirming dismissal of retaliation claim for lack of exhaustion while noting in footnote that such "dismissal is without prejudice so that a plaintiff may return to court after he has exhausted his administrative remedies"); *Davenport v. Edward D. Jones & Co., LP*, 891 F.3d 162, 167 (5th Cir. 2018) (affirming dismissal of claim that could not "reasonably be expected to grow out of the charge of discrimination," meaning that exhausted claims can only include allegations that are "like or related to those allegations contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission").

### IV. LEAVE TO AMEND

In general, the Court considers whether it should grant a plaintiff leave to amend when it has determined that Fed. R. Civ. P. 12(b)(6) warrants dismissal. Leave to amend is not required, however, when plaintiffs have already pled their "best case." *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). *Id*. at 768. Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Notably, a "party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *Id*.

In his more definite statement, Plaintiff indicates that he will "send more next week." *See* ECF No. 17. Although he did not provide more facts the next week, he did provide additional evidence/information with his response (ECF No. 20 and 21) to the motion to dismiss, and supplemental evidence (ECF No. 23) on February 13, 2024. He also provided another supplement on February 20, 2024, *see* ECF No. 25, and sealed medical records (ECF No. 28) on March 14, 2024. The Court has considered all allegations related to Plaintiff's race discrimination claim. Based upon all of the foregoing, the Court finds that Plaintiff has stated his best case and thus declines to exercise its discretion to permit the filing of an amended complaint. The Court has provided Plaintiff ample opportunity to provide all factual allegations to support his discrimination claim.

## V. MOTION FOR APPOINTMENT OF COUNSEL

As discussed above, Plaintiff has not provided enough factual allegations to survive Defendant's motion to dismiss. Consequently, for reasons set out in prior orders, *see* ECF Nos. 4 and 16, the Court denies Plaintiff's motion for appointment of counsel.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 19) and **DENIES** the Motion for Appointment of Counsel (ECF No. 22) filed by Plaintiff . Because Plaintiff's allegations fail to state a plausible claim under *Twombly* and *Iqbal*, the Court **DISMISSES** this action with prejudice. It will separately issue a final judgment in accordance with Fed. R. Civ. P. 58.

**It is so ORDERED this 9th day of April 2024.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**